```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                        ATHENS DIVISION

STEPHEN LAMAR HUBBARD, JR.       *

        Plaintiff,               *

vs.                              *
                                          CASE NO. 3:04-CV-118(CDL)
Sheriff IRA EDWARDS, JR.,        *
individually, PRISON HEALTH
SERVICES, INC., and UNIFIED      *
GOVERNMENT OF ATHENS-CLARKE
COUNTY, GEORGIA,                 *

        Defendants.              *
```

## O R D E R

Presently pending before the Court in this case are two summary judgment motions: the summary judgment motion of Defendant Edwards and Defendant Clarke County (Doc. 42) and Defendant Prison Health Services, Inc.'s summary judgment motion (Doc. 44). For the reasons set forth below, both summary judgment motions are granted. In addition to the summary judgment motions, there are several motions related to Plaintiff's nursing expert, Janice Jefferson. As discussed more fully below, Plaintiff's Motion to Withdraw Affidavit and to Allow Re-Filing (Doc. 50) is denied as moot; Defendants' motions to strike the affidavit of Janice Jefferson (Doc. 54 & Doc. 63) are granted; and Plaintiff's Motion for Leave to Amend his witness list (Doc. 56) is denied.

## INTRODUCTION

Plaintiff brought this lawsuit to recover for the death of his wife, Laverne Rose Hubbard ("Mrs. Hubbard"). Mrs. Hubbard died of a heart attack while she was being held as a pretrial detainee at the Clarke County Jail in Athens, Georgia. Plaintiff claims that

Defendants denied Mrs. Hubbard adequate medical care and that Mrs. Hubbard died as a result.

## PLAINTIFF'S NURSING EXPERT

In response to Defendants' summary judgment motions, Plaintiff submitted the affidavit of Janice Jefferson, a registered nurse who offered opinion testimony regarding the medical care provided to Mrs. Hubbard. Defendants move to strike the affidavit, contending that Plaintiff did not timely identify Nurse Jefferson as an expert in this case.

The Court entered its Rules 16 and 26 Order in this case on January 3, 2005, requiring that Plaintiff disclose the identity of his expert witnesses within ninety days after the filing of the last answer of the Defendants named in the original Complaint.[1] Plaintiff has never requested an extension of this deadline. Defendants filed their answers to Plaintiff's original Complaint on December 21, 2004. Defendants filed their answers to Plaintiff's Amended Complaint on July 8, 2005. After the Court granted three extensions of the time to complete discovery, discovery in this case ultimately closed on April 3, 2006. Plaintiff did not, at any time prior to the close of discovery, identify Nurse Jefferson as an expert or provide an expert report regarding Nurse Jefferson's qualifications and opinions.[2]

---

[1] After the Court entered this Order, it granted the parties' joint motion to stay discovery pending the Court's ruling on Plaintiff's Motion to Remand. That stay was lifted when the Court denied the Motion to Remand. The stay order did not alter the expert disclosure deadline.

[2] It is not clear that an expert report complying with all of the requirements of Fed. R. Civ. P. 26(a)(2)(B) has *ever* been submitted by Nurse Jefferson. Nurse Jefferson's affidavit does not provide a complete statement of what data or other information was considered by Nurse Jefferson in forming her opinions; it does not provide a complete statement

2

Nonetheless, Plaintiff submitted Nurse Jefferson's affidavit to the Court in response to Defendants' summary judgment motions on June 23, 2006. Plaintiff contends that he "inadvertently omitted" Nurse Jefferson's name from his list of witnesses and seeks to amend his witness list to add Nurse Jefferson's name.

Federal Rule of Civil Procedure 26(a)(2) required Plaintiff to disclose, within the time limits set by the Court, the identity of any witness he retained to provide expert testimony in this case. Fed. R. Civ. P. 26(a)(2)(C). Under the Court's Rules 16 and 26 Order, that disclosure was required within ninety days after the filing of the last answer of the Defendants. Plaintiff did not disclose the identity of his expert within that time frame or even within the thrice-extended discovery period. Furthermore, even when Plaintiff finally did disclose the identity of Nurse Jefferson by submitting her affidavit in response to Defendants' summary judgment motions, that disclosure was not accompanied by an expert report meeting all of the requirements of Rule 26(a)(2)(B). Under Federal Rule of Civil Procedure 37(c)(1), if a party, without substantial justification, fails to disclose the identity of an expert as required by Rule 26(a), that party is not permitted to use the expert witness on any motion *unless* the failure is harmless. Fed. R. Civ. P. 37(c)(1); *See also Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004) (finding no error in district court's exclusion of expert's declaration because expert's report did not comply with Fed. R. Civ. P. 26(a)(2)(B)); *Fedrick v. Mercedes-Benz USA, LLC*, 366

---

of Nurse Jefferson's qualifications; it does not disclose what compensation Nurse Jefferson is to be paid for her study and testimony; and it does not list any other cases in which Nurse Jefferson has testified as an expert.

F. Supp. 2d 1190, 1194-95 (N.D. Ga. 2005) (granting motion to strike expert witness testimony where expert was not disclosed until after close of discovery); *Hammond v. Gordon County*, 316 F. Supp. 2d 1262, 1266 (N.D. Ga. 2002) (excluding expert's affidavit because expert was not disclosed until shortly before close of discovery).

Here, although Plaintiff contends that his untimely disclosure will not prejudice Defendants, Plaintiff's failure to timely disclose the identity of Nurse Jefferson is hardly harmless.  Plaintiff did not identify Nurse Jefferson as a potential witness or designate Nurse Jefferson as an expert until June 23, 2006—more than two and a half months after the close of discovery and more than a month after Defendants filed their motions for summary judgment.  Discovery, which was extended three times, is now closed, leaving Defendants with no opportunity to depose Nurse Jefferson or to retain their own rebuttal expert.  Moreover, Plaintiff has offered no substantial justification for his failure to identify Nurse Jefferson in a timely fashion or his failure to provide an expert report that complied with Rule 26(a)(2)(B).  He merely states that he "inadvertently omitted" Nurse Jefferson's name from his witness list.  Because Plaintiff has offered no substantial justification for his failure to timely identify Nurse Jefferson and because the failure is not harmless, the Court finds that, under Rule 37(c)(1), Plaintiff should not be permitted to use Nurse Jefferson's affidavit in response to Defendants' pending summary judgment motions.  Therefore, the Court grants Defendants' motions to strike and denies Plaintiff's motion to

amend his witness list.[3] Accordingly, the Court will not consider Nurse Jefferson's affidavit in ruling on the summary judgment motions.[4]

## SUMMARY JUDGMENT MOTIONS

*1. Summary Judgment Standard*

Summary judgment may be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The summary judgment movant has the burden to show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). *See also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once this burden is met, the burden shifts and the nonmoving party must go beyond the pleadings and produce evidence to show that there *is* a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 324; *Clark*, 929 F.2d at 607-08. When the combined body of evidence is presented, the movant should be granted summary judgment only if the evidence, viewed in the light most favorable to the nonmoving party, would not permit a reasonable jury to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52

---

[3] In light of this ruling, Plaintiff's motion to withdraw Nurse Jefferson's affidavit and re-file the properly executed affidavit is moot.

[4] Even if the Court were to consider Nurse Jefferson's affidavit, Defendants would still be entitled to summary judgment. At most, the affidavit would create a genuine issue of material fact on the adequacy of medical care rendered to Mrs. Hubbard. However, the affidavit does not establish causation and it also does not establish that there was any failure to supervise the medical staff at the jail or a policy or custom of providing inadequate medical care to Clarke County jail inmates.

(1986); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

*2. Background Facts*

Viewing the facts in the light most favorable to Plaintiff reveals the following. On the morning of November 23, 2002, Mrs. Hubbard was arrested after a domestic dispute and transported to the Clarke County Jail. The arresting officer reported that Mrs. Hubbard was, at the time of the arrest, upset and unruly. When Mrs. Hubbard arrived at the jail, she continued to behave in a disorderly manner. After she was searched, Mrs. Hubbard was taken to a holding area, where Sergeant Angela Harper of the Clarke County Sheriff's Department spoke with Mrs. Hubbard in order to calm her. By noon, Mrs. Hubbard had calmed down somewhat and was provided with lunch. Mrs. Hubbard remained in the holding cell, and jail staff checked on her periodically throughout the afternoon.

Around 4:30 p.m., Mrs. Hubbard began banging on the door to her cell. Mrs. Hubbard informed Sgt. Harper that she was feeling funny and that she had felt the same way once before when she passed out in court, after which she woke up in the intensive care unit and was informed that she had suffered a heart attack. Sgt. Harper immediately called for a nurse to come check on Hubbard. Nurse Carolyn Lumpkin, a licensed practical nurse ("LPN"), responded to this call.[5] Nurse Lumpkin knew Mrs. Hubbard because Mrs. Hubbard had been incarcerated in the Clarke County jail earlier that month. When

---

[5] At the time of the events giving rise to this lawsuit, Nurse Lumpkin was an employee of Defendant Prison Health Services, Inc. ("PHS"). At the time of the incident, PHS provided medical treatment to the inmates of the Clarke County jail under an agreement between PHS and the Unified Government of Clarke County.

6

Nurse Lumpkin arrived at the holding cell, Mrs. Hubbard was still agitated and yelling.  Mrs. Hubbard told Nurse Lumpkin that she did not want to see Nurse Lumpkin—she just wanted to go to the hospital. Mrs. Hubbard, who admitted to Nurse Lumpkin that she had been drinking alcohol, initially refused to be clinically evaluated by Nurse Lumpkin.  But with the assistance of detention officers, Nurse Lumpkin was able to take Mrs. Hubbard's vital signs around 4:45 p.m.[6] Nurse Lumpkin found Mrs. Hubbard's vital signs to be within normal limits for her agitated state, and she did not observe any objective signs that Mrs. Hubbard needed to be transported to the hospital.

Mrs. Hubbard did tell Nurse Lumpkin, "I got heart problems." Nurse Lumpkin knew, based on her previous experience with Mrs. Hubbard, that Mrs. Hubbard was on several medications, including medicines that are generally prescribed for people with heart problems.  Nurse Lumpkin asked Mrs. Hubbard if she had taken her medication, and Mrs. Hubbard indicated that she had not.  The jail infirmary still had some of Mrs. Hubbard's medicine from Mrs. Hubbard's previous incarceration, and Nurse Lumpkin asked Mrs. Hubbard if she would take the medicine.  Mrs. Hubbard refused.

Mrs. Hubbard also indicated to Nurse Lumpkin during this initial evaluation that she felt hot and that she felt like she needed to have a bowel movement.  Mrs. Hubbard then removed her shirt and lay on the floor of the holding cell.  She did not indicate that she was

---

[6]Mrs. Hubbard's blood pressure was 150/100, and she had a pulse of 89 and an oxygen level of 98%.

having chest pains,[7] and Nurse Lumpkin did not observe any clinical presentations suggesting that Mrs. Hubbard was in cardiac arrest. Nurse Lumpkin, who agreed with Mrs. Hubbard that the cell was warm, asked the detention officers to turn down the air conditioning in the holding cell, which they did.  Nurse Lumpkin also used cool cloths to wash Mrs. Hubbard's face.  After some time, Mrs. Hubbard calmed down, and Nurse Lumpkin left Mrs. Hubbard and returned to her other duties. Jail staff continued to look in on Mrs. Hubbard periodically.

Around 6:00 p.m., Nurse Lumpkin passed through the area where Mrs. Hubbard was being held.  Although she did not go into Mrs. Hubbard's cell to check on her, Nurse Lumpkin did not receive any indication from Mrs. Hubbard or the detention officers that Mrs. Hubbard was experiencing any further problems.  Around 7:00 p.m., Mrs. Hubbard told Sgt. Harper that she was feeling funny and hot and that she was having chest pains.  Sgt. Harper went to get Nurse Lumpkin, who was treating another inmate's stab wounds. Shortly after that, Nurse Lumpkin went to Mrs. Hubbard's cell, where Mrs. Hubbard was lying on the floor.  Nurse Lumpkin immediately checked Mrs. Hubbard's vital signs and found her to be unresponsive. Nurse Lumpkin and a detention officer began cardiopulmonary resuscitation ("CPR"), and another detention officer called 911. Nurse Lumpkin and the detention officer continued CPR until the ambulance arrived with a team of emergency medical technicians, who

---

[7]Plaintiff contends that Mrs. Hubbard did say that she was having chest pains during Nurse Lumpkin's initial assessment, but Plaintiff did not indicate where in the record there is evidence of this statement, and the Court could not locate any such evidence.  The record does reflect that Mrs. Hubbard said she felt "funny" and that she had experienced a similar feeling when she passed out in court on a prior occasion, after which she was informed that she had suffered a heart attack.

8

took over the CPR and transported Mrs. Hubbard to the hospital. Mrs. Hubbard was pronounced dead at the hospital, and her autopsy report indicates that she died from cardiac arrest.

In November 2002, PHS had policies and procedures for clinically evaluating and assessing Clarke County jail inmates and for providing inmates with emergency medical care.[8] According to these procedures, when a nurse received a call from a detention officer regarding an inmate, the nurse was required to make a clinical evaluation of that inmate using the following method: (1) record subjective complaints of the inmate, (2) make an objective assessment of the patient by taking the inmate's vital signs, (3) document the type of assessment performed on the inmate, and (4) develop and record a plan indicating what, if any, follow-up is necessary.  If the nurse found that the inmate presented objective clinical findings indicating an emergent need for transport to the hospital, the nurse was required to have a detention officer call 911.  And if the nurse found that the inmate needed further assessment, she was required to call the on-call PHS physician.  Nurse Lumpkin followed this procedure when she treated Mrs. Hubbard.  During her initial assessment of Mrs. Hubbard at 4:45 p.m., Nurse Lumpkin found that Mrs. Hubbard did not present any

---

[8] Plaintiff contends that there is not any evidence in the record regarding PHS's policies.  However, Nurse Lumpkin's affidavit, which was submitted as an exhibit to Defendant PHS's summary judgment motion, provides evidence of these policies.  This affidavit was made after Nurse Lumpkin's deposition, but there is no inconsistency between the affidavit and the deposition, so the Court finds no reason to disregard the affidavit. See *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987) (noting that Eleventh Circuit cases "require a court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit"); *see also Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir. 2006) (holding that district court should not disregard affidavit that supplemented incomplete deposition testimony and did not contradict deposition testimony).

objective clinical indications that she required emergent medical care or needed further assessment by a physician.  Nurse Lumpkin did not receive any additional information regarding a change in Mrs. Hubbard's status until she was notified around 7:00 p.m. that Mrs. Hubbard was complaining of chest pains.  After examining Mrs. Hubbard at that time, Nurse Lumpkin determined that Mrs. Hubbard required emergent medical care, and a detention officer called 911 while Nurse Lumpkin and a detention officer performed CPR on Mrs. Hubbard.

*3. Discussion*

Plaintiff asserts claims under a variety of theories, including: (1) negligent failure to provide medical care in breach of a legislative duty to provide medical care; (2) wilful and wanton failure to provide medical care; (3) wrongful death; (4) breach of contract resulting in injury to third-party beneficiary; (5) violation of state constitutional prohibition of abuse of arrestees and prisoners; and (6) 42 U.S.C. § 1983.  Each of Plaintiff's claims is rooted in the same basic contention: that Defendants failed to provide Mrs. Hubbard with adequate medical care and that this failure resulted in Mrs. Hubbard's death.  However, without some proof that Mrs. Hubbard was *not* provided with adequate medical care or that a failure to provide adequate medical care caused Mrs. Hubbard's death, each of these claims fail.[9]

---

[9] The Court recognizes that Defendants have made a number of arguments based on a variety of defenses and immunities available to them under state and federal law.  In light of Plaintiff's failure to point the Court to some evidence that Mrs. Hubbard did not receive adequate medical care or that any inadequate care caused Mrs. Hubbard's death, the Court finds it unnecessary to evaluate whether these defenses and immunities apply because even if they did, Plaintiff cannot prove an essential element of all of his

Plaintiff is correct that the government must provide its pre-trial detainees with minimally adequate medical care. *See Howard v. City of Columbus,* 239 Ga. App. 399, 405, 521 S.E.2d 51, 62 (1999). "[A]dequate medical care means that level of medical care reasonably commensurate with modern medical science and a quality of care acceptable within prudent professional standards; it means a level of health services that is reasonably designed to meet routine as well as emergency medical care. *Id.* at 405-06, 521 S.E.2d at 62 (citing *Fernandez v. United States,* 941 F.2d 1488, 1493-94 (11th Cir. 1991)).

Here, Plaintiff claims that Nurse Lumpkin failed to recognize objective clinical indications that Mrs. Hubbard required emergent medical care when Nurse Lumpkin first examined Mrs. Hubbard at 4:45 p.m.: Plaintiff asserts, with no supporting evidence, that "any reasonable person would have at least called a physician" to report Mrs. Hubbard's symptoms. Plaintiff contends that Mrs. Hubbard was "obviously critically ill" and that Nurse Lumpkin was thus required to call in a physician or send Mrs. Hubbard to the hospital. However, there is no evidence in the record from which a reasonable jury could conclude that Mrs. Hubbard was "obviously critically ill" such that any reasonable medical professional in Nurse Lumpkin's shoes would have sent her to the hospital or called a physician. Rather, the undisputed evidence shows that Mrs. Hubbard was agitated, hot, uncomfortable, and felt "funny" but that Mrs. Hubbard's vital signs were considered to be normal for her agitated state. Mrs. Hubbard did not complain of chest pains when Nurse Lumpkin first

---

claims: that Mrs. Hubbard's death resulted because she did not receive adequate medical care.

11

examined her.  For all of these reasons, Nurse Lumpkin determined that Mrs. Hubbard did not require emergency medical treatment at the hospital or further assessment by a physician.[10]  Plaintiff has pointed to no evidence that Nurse Lumpkin's treatment of Mrs. Hubbard fell below the applicable standard of care.  There is no evidence that a reasonable LPN presented with the same circumstances should have determined that Mrs. Hubbard needed to be transported to the hospital for emergency medical treatment.  There is also no evidence that a reasonable LPN presented with the same circumstances should have called the on-call physician to request further assessment of Mrs. Hubbard's symptoms.  Finally, there is no evidence that Nurse Lumpkin or anyone else who was present at the jail observed a deterioration in Mrs. Hubbard's condition such that emergency medical treatment was warranted until Mrs. Hubbard called for help and then became unresponsive around 7:00 p.m.[11]

---

[10] Plaintiff compares Mrs. Hubbard with James Howard, Jr., an inmate of the Muscogee County jail who died of diabetic ketoacidosis after receiving inadequate medical care. *See Howard,* 239 Ga. App. at 401-02, 521 S.E.2d at 59-60.  Mr. Howard was a diabetic with hypertension, and the jail staff failed to provide him with a proper diet and medication. Over the course of eight months, Mr. Howard's condition deteriorated dramatically, to the point that he became "obviously sick": he lost considerable weight, had a shrunken face, suffered frequent fainting spells, was often dizzy, craved water, and was so weak that he could not walk.  Moreover, when an LPN examined Mr. Howard, she ignored the jail's protocol that *required her to call 911 based on his symptoms*.  In that case, that evidence amply demonstrated that Mr. Howard was "obviously sick" and required medical treatment in a hospital.  This case is clearly distinguishable.  Nurse Lumpkin did not, based on her objective assessment of Mrs. Hubbard's complaints and symptoms, find that Mrs. Hubbard was "obviously critically ill," and there is nothing in the record tending to show that Nurse Lumpkin's determination was incorrect.

[11] Plaintiff suggests that Nurse Lumpkin was under-trained and that she was not adequately supervised as required by Georgia law.  There is no evidence that Nurse Lumpkin was under-trained or inadequately supervised.

12

For all of these reasons, the Court finds that Plaintiff has not produced sufficient evidence from which a reasonable jury could conclude that Defendants failed to provide Mrs. Hubbard with adequate medical care.  The Court further observes that even if a genuine issue of material fact existed on this issue, there is simply no evidence of causation—that but for the alleged delay in providing medical care Mrs. Hubbard would have lived or had an increased chance of survival.  Therefore, Defendants are entitled to summary judgment on all of Plaintiff's claims.

IT IS SO ORDERED, this 1st day of September, 2006.

                                            S/Clay D. Land
                                                CLAY D. LAND
                                UNITED STATES DISTRICT JUDGE